UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

UNITED STATES OF AMERICA,  )
    Respondent,  )
          )
v.           )  No. 2:06-CR-19
           )  No. 2:11-CV-299
           )
JIMMY SPRAGUE,    )
    Petitioner.   )

## MEMORANDUM OPINION

This matter is before the Court on the motion of Jimmy Sprague ("Sprague" or "petitioner") "To Vacate, Set Aside, Or Correct A Sentence By A Person In Federal Custody," under 28 U.S.C. § 2255, [Doc. 183].[1] The United States has responded in opposition, [Doc. 189], and the matter is now ripe for disposition. The Court has determined that the files and records in the case conclusively establish that Sprague is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary and the motion will be DENIED.

## I. Procedural and Factual Background

Sprague was indicted by the grand jury on May 9, 2006, and charged in a two count indictment with receipt (Count One) and possession (Count Two) of child pornography, [Doc. 1]. Sprague almost immediately filed a motion to suppress evidence seized during the execution of two state search warrants, [Doc. 14]. The government responded to the motion to suppress on June 14, 2006, [Doc. 20]; however, a hearing on the motion to suppress was continued several times by motions of the government and motion of the defendant, [see Docs. 19, 26, 36], and a hearing on the motion to suppress was finally held on October 4, 2006. After the hearing, the Magistrate Judge issued a report and recommendation recommending denial of the defendant's

---

[1] All references are to docket entries in case No. 2:06-CR-19.

motion, [Doc. 65]. This Court adopted and approved the report and recommendation on June 6, 2007, [Doc. 98]. On July 10, 2007, the grand jury returned a superseding indictment making only minor changes in the charging dates, [Doc. 104].

On September 10, 2007, the Court orally denied Sprague's motion for a continuance of the trial, [Doc. 109], and Sprague subsequently entered into a negotiated plea agreement with the government, filed with the Court on September 21, 2007, [Doc. 127], in which petitioner agreed to plead guilty to Count One of the indictment. Sprague's plea was accepted by the Court on the same day after a thorough Rule 11 colloquy, [*see* Doc. 128], and sentencing was scheduled for February 4, 2008. A presentence investigation report ("PSR") was ordered. The PSR was disclosed to the parties on February 25, 2008. Based on a total offense level of 31 and a criminal history category of II, the guidelines range for imprisonment was determined to be 121 to 150 months; however, the defendant was subject to a mandatory minimum term of 180 months imprisonment and the guidelines range became 180 months, [PSR, ¶ 71]. Sprague was sentenced by the Court on June 23, 2008, to a 360 month term of imprisonment and a lifetime term of supervised release, [Doc. 159]. Judgment was entered on June 26, 2008, [Doc. 161]. Sprague's notice of appeal was filed on the same day, [Doc. 162].[2] The Sixth Circuit affirmed Sprague's conviction and sentence on March 24, 2010, [Doc. 176], and Sprague filed a petition for writ of certiorari to the Supreme Court on June 22, 2010, [Doc. 178]. The petition was denied by the Supreme Court on October 4, 2010, [Doc. 180], and Sprague timely filed the instant petition pursuant to 28 U.S.C. § 2255 on October 6, 2011, [Doc. 183].[3]

The petitioner's plea agreement contained the following stipulation of facts:

---

[2]  In his plea agreement, Sprague had reserved the right to appeal the denial of his motion to suppress and his sentence.

[3]  Although Sprague's motion was filed on October 6, 2011, the envelope in which he mailed the petition had a postmark of October 4, 2011. Under the "Mailbox Rule," Sprague's petition was therefore timely.

Defendant Sprague as previously been convicted of sexual exploitation of a minor in the Criminal Court of Loudon County in 1992 and aggravated sexual battery and two counts of sexual exploitation of a minor in state court for Knox County, Tennessee in 1993.

While the late 1990's, the defendant, JIMMY E. SPRAGUE, was living at an apartment located at 1436 Prospect Drive in Kingsport, Tennessee. Starting in the latter half of 2003, SPRAGUE began downloading images which contained depictions of child pornography from the internet and saving these files onto his home computer located at the previously mentioned residence. He continued to receive child pornography until 2005. On August 19, 2005, officers and detectives of the Kingsport Police Department executed a state search warrant at SPRAGUE'S residence. Under this initial search warrant, his computer was seized from the residence located at 1436 Prospect Drive in Kingsport, Tennessee. Based on the information prior to August 19th and the information obtained on August 19th and after, a subsequent search warrant was issued for the computer itself on December 15, 2005. By this point, the Federal Bureau of Investigation had become involved in the investigation of SPRAGUE. A forensic analysis of the computer by the Federal Bureau of Investigation determined that SPRAGUE had saved over 800 images which involved depictions which would meet the definition of child pornography and 18 U.S.C. § 2256(8). The parties agree that these images of child pornography were downloaded from the internet and saved by SPRAGUE for his own personal sexual gratification and that there is no evidence that SPRAGUE was involved in distributing these images to anyone. In addition to the images saved on the computer, there were some images saved on floppy disks at the residence, as well as numerous IP addresses for sites which appeared from their names to contain child pornography seized from SPRAGUE'S residence. Approximately fifteen of the children portrayed in these series of images have been identified by the Federal Bureau of Investigation. In many of the photographs, the children are obviously pre-pubescent and many of the images are of minors involved in sexually explicit conduct, including vaginal and oral penetration. The United States agrees that no images received by the defendant portray sadistic or masochistic conduct or other depiction of violence as defined by the United States Sentencing Guidelines § 2G2.2(b)(4).

[Doc. 127 at ¶ 4]. The PSR contained the following additional statement of facts:

11.    On June 24, 2005, the defendant filed a petition with the

Sullivan County, Tennessee Criminal Court seeking relief from paying the required annual registration fee under the Sexual Offender Registration Act. That matter was designated as docket number C50,582. Defendant Sprague also filed a sworn Uniform Affidavit of Indigency in docket number C50,582 and sought appointment of counsel. On July 27, 2005, the Sullivan County, Tennessee grand jury returned a true bill in docket number S50,338, which involves allegations that the defendant stalked and harassed a 16- year-old female. On August 2, 2005, the defendant filed another sworn Uniform Affidavit of Indigency and sought court-appointed counsel. During the development of docket number S50,338, allegations were made that the defendant may be in violation of the Sex Offender Registration Act and may have perjured himself before a Sullivan County, Tennessee Court. In particular, investigation revealed that the defendant dressed as "Santa Claus" during the Christmas season in 2004 and had sought locations frequented by children. The defendant was observed in public with a short male, to whom, in perpetuation of the "Santa" theme, he referred to as an "Elf." According to staff at Lincoln Elementary School, the defendant acted as "Santa" for children in December of 2004.

12.     Due to his prior convictions, the defendant was mandated to register as a violent sexual offender quarterly. This required him to appear at the Kingsport, Tennessee Police Department and respond to specific questions under oath. On registration material, the defendant listed his primary residence as 1436 Prospect Drive, Kingsport, Tennessee, on June 30, 2005. According to the manager and district manager of the apartment complex, the defendant often spent consecutive days away from his residence. The defendant further listed a 1979 Pontiac as his only vehicle. Investigation revealed the defendant had three vehicles, including a 1986 Toyota pickup truck and a 1984 Ford F150 pickup truck.

13.     The defendant further reported on his Uniform Affidavit of lndigency in docket number S50,338, that he resides with  two daughters, ages 14 and 16. This is in violation of the  Sex Offender Registration Act in that the defendant is required to inform law enforcement of any minor residing with him. Based on the above information, Kingsport, Tennessee Police Department obtained a search warrant for the defendant's residence located at 1436 Prospect Drive, Kingsport, Tennessee. During a search of the defendant's residence on August 19,2005, officers located floppy disks (some were labeled pre-teen), compact discs, cameras and

rolls of film, a Dell computer, Microsoft "Picture It" software, 65 VHS tapes (including adult pornography and children's movies), a bag containing a "Santa Claus" uniform and related items, handwritten notes involving child pornography, children's toys, several bags of candy, business cards with the defendant's name and email address, santainkingsport@yahoo.com. a Sentry safe containing photographs, $39,280.25 in cash, and various other items. Also on August 19, 2005, officers received permission from the defendant to search a storage unit located at Sullivan Mini Storage in Kingsport, Tennessee. According to Kingsport, Tennessee Police Department Detective Melanie Adkins, the storage unit was stacked with nothing but children's items, toys, games, clothes, and dolls for all ages of children.

14.     According to Special Agent Sandra Farrow, Federal Bureau of Investigation, analysis of the items seized revealed approximately 800 images of child pornography. These photographs were sent to the National Center for Missing and Exploded [sic] Children for examination of these 800 images, 321 identified known children from 15 different series. This officer reviewed a number of the images seized from the defendant's residence. At least four images portrays sadistic and masochistic conduct. Three of these images are of prepubescent children bound by ropes and chains and one image is of an adult male penetrating a female infant.

15.     The search of the defendant's computer also revealed that the defendant, through a Yahoo account utilizing the email address hermanthegreat69@yahoo.com, sent emails to Mercedes LNU, a 16 year old girl in Kingsport, Tennessee, utilizing the email address innocentbabygirl2004@yahoo.com. The following emails are from "Herman," a name the defendant assigned to his penis.

> On December 10, 2004, the defendant wrote: "Jimmy told me that he showed you my new Santa hat. I must have been sleeping because I didn't know when he showed you or I would havd [sic] modeled it for you. If you want me to put my Santa hat on for you or if you want to put it on for me, just let me know or tell Jimmy and he will tell me what you want. You will be in for a BIG surprise, but I think you will love it. Anxiously awaiting your response. Herman"
> On December 15, 2004, Mercedes LNU responded:

"I cum I saw ur hat is pretty ur pretty I felt u I cum again I want more I luv you big guy"

On December 15, 2004: the defendant responded: "Now you are being yourself. I like it. Why did you sent this to me and not to Herman? He is the one who wrote you about his new Santa hat. I send you more of a reply later. Email me back when you get this. Love Jimmy"

16.     Subsequent to the search of the defendant's residence on August 19, 2005, Sandra Joyce Conley was interviewed by officers of the Kingsport Police Department. She made the following statement:

I moved into my apartment around September of last year. I ran into Jimmy Sprague just before Christmas of 2004 at the Full Gospel Mission. I first met Jimmy in 1988 down near Sweetwater, TN. It was actually in a bar in the town of Vonor. I became pregnant with his child and lost track of him. He didn't know we had a daughter until December of 2004. I told him one day while we were at the Full Gospel Mission. We would go and eat there. We are not involved sexually. Just good friends. He takes me to my doctors appointments down in Knoxville. He has done a lot for me. He stays with me a lot and checks on me because I have M.S., C.P. scoliousis [sic] and I'm blind in one eye. He has stayed  with me for at least a week at a time. He is very helpful to me. He has done this many times. He also stays there two and three days at a time too. I have never been inside his place. He never told me about being in jail.  I did not know that he was on the sexual offender registry. I have a 12 year old daughter named Rachael Conley. She lives with her dad Robert Conley in Johnson City. She visits me on weekends. Jimmy and I take her to Skate City on Friday nights, Saturday nights and on Sundays. I've seen young girls that looked like around 12 or 13 come up to Jimmy and say 'do you want to fuck me.' He would tell them no. I thought that was very strange. I do not allow pornography in my home. Jimmy has never brought any in my home. He has played Santa at Full Gospel Mission and some big

church downtown. He sends me emails from santainkingsport@yahoo.com. Jimmy has really been staying with me for over a month now. I was afraid to tell you. I didn't want to get in trouble. Maybe around February is when Jimmy started staying with me off and on. It wouldn't be every day. I don't know where he would stay when he wasn't with me.

17.     According to Special Agent Sandra Farrow of the Federal Bureau of Investigation, Sandra Conley has two daughters, Rachael and Shana. Shana Conley is the defendant's daughter. During an interview with Rachael Conley, she indicated that she had observed the defendant having sex with her sister, Shana Conley (the defendant's daughter). Rachael reported that Shana asked her not to tell their mother about the incident she observed. Rachael Conley further stated that on her 13th birthday on October 7, 2005, the defendant attempted to have anal sex with her and touched her inappropriately. Rachael stated defendant Sprague would tell her that "Herman was getting hard." As indicated above, the defendant referred to his penis as "Herman." Agent Farrow reported she was present during the interview with Rachael Conley and that the Tennessee Department of Children Services launched an investigation based on these accusations, but attempts to locate a written report were unsuccessful. However, based on the above information, on June 15, 2006, the defendant was charged in Sullivan County, Tennessee, with sexual battery and solicitation of minor.

[PSR at ¶¶ 11 – 17].

## II.     Standard of Review

This Court must vacate and set aside petitioner's  sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255.    Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in

the case, reveal the movant is not entitled to relief.  If it plainly appears the movant is not entitled

to relief,  the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to

relief.  *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733,

735 (6th Cir. 1961).  "Conclusions, not substantiated by allegations of fact with some probability

of verity,  are not sufficient to warrant a hearing."  *O'Malley*, 285 F.2d at 735 (citations omitted).

A motion that merely states general conclusions of law without substantiating allegations with

facts is without legal merit.  *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United*

*States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).   To warrant relief under 28 U.S.C.

§ 2255 because of constitutional error, the error must be one of constitutional magnitude which

had a substantial and injurious effect or influence on the proceedings.  *Brecht v. Abrahamson*,

507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons  v.  Sowders*, 34 F. 3d 352,

354 (6th Cir. 1994).   *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994)

(applying *Brecht* to a § 2255 motion).   If the sentencing court lacked jurisdiction, then the

conviction is void and must be set aside.  *Williams v. United States*, 582 F. 2d 1039, 1041 (6th

Cir.), *cert. denied*, 439 U.S. 988 (1978).   To warrant relief for a non-constitutional error,

petitioner must show a fundamental defect in the proceeding that resulted in a complete

miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair

procedure.  *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506

(6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).  In order to obtain collateral relief under § 2255, a

petitioner must clear a significantly higher hurdle than would exist on direct appeal.   *United*

*States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3rd Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

## III.  Analysis and Discussion

Sprague raises four claims in his § 2255 motion:  (1)  the presiding judge was biased against him (Ground One); (2) ineffective assistance of counsel in that counsel (a) did not obtain an expert witness, and (b) did not interview and call witnesses (Ground Two); (3) his guilty plea was not voluntary and was in violation of the privilege against self-incrimination (Ground Three), and (4) the guilty plea was entered with the understanding that petitioner would receive a sentence of 180 months, the mandatory minimum (Ground Four).  The Court will address each claim in turn, although not in the order raised by the petitioner.

### A.  Voluntariness of Guilty Plea (Ground Three)

Sprague insists that he wanted a trial but was coerced into a guilty plea because the Court would not provide him with an expert witness, and therefore "the only way [he] could win was to plead guilty and win the case on appeal of the prior bad search." According to Sprague, he was told by counsel that he could not win the case without an expert witness "to counter the government's expert witness." Petitioner further insists he wanted to withdraw his guilty plea but was told by counsel that he could not.

As an initial matter, Sprague has procedurally defaulted his claim that his guilty plea was coerced and involuntary. A petitioner must raise his claims on direct appeal, "[o]therwise, the claim is procedurally defaulted" for purposes of § 2255 review. *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001) (citing *Bousley v. United States*, 523 U.S. 614, 621 (1998)). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in [a § 2255 motion] only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley*, 523 U.S. at 622 (quotation marks omitted). Here, Sprague makes no allegation of either cause or actual prejudice, except to say that "counsel would not raise the issue on appeal." The Court will interpret that to be an allegation of ineffective assistance of counsel on appeal.

To prove ineffective assistance of appellate counsel, Sprague must show both deficient performance and prejudice. *Strickland*, 466 U.S. at 687. Notably, appellate "counsel has no obligation to raise every possible claim and the decision of which among the possible claims to pursue [on appeal] is ordinarily entrusted to counsel's professional judgment," and "[c]ounsel's performance is strongly presumed to be effective." *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004) (citations omitted). "[O]nly when ignored issues are clearly stronger than those

presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003).

More specifically, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quotation marks omitted); *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").

Even if Sprague could establish ineffective assistance of appellate counsel as cause, which he cannot, he does not argue, and cannot establish, actual prejudice. As discussed below, even if voluntariness of the guilty plea had been raised before the district court or on direct appeal, Sprague cannot show any reasonable likelihood of success.

On July 31, 2006, the government provided its expert disclosures pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), [Doc. 106]. The disclosure provided a summary of the anticipated expert testimony of Special Agent ("SA") Derek Johnson of the Federal Bureau of Investigation, who examined three computers seized from the home of petitioner. SA Johnson, based on his forensic examination of the computers and his training as a computer forensic examiner, opined that the user of a Dell Optiplex GX, Pro 180 computer with serial number 89LX1 seized from petitioner's residence, "received and possessed images of child pornography after May 1, 2003." [*Id*. at 4]. SA Johnson further opined that the user of the computer "possessed a high degree of knowledge and skill in downloading, converting, and saving electronic files from the internet; in creating, saving and accessing electronic files, in creating a

structure for electronic files saved on the hard drives of 89LX1; in online communications; and in paying bills and managing personal finances online." [*Id.* at 4-5].

On September 10, 2007, Sprague moved for a continuance of the September 25, 2007 trial to afford time for the defense to obtain a computer expert. [Doc. 109]. The expert, however, because of prior commitments, "would likely not have a complete examination completed . . . until close to the end of the year." [*Id.* at 2]. The Court took up the motion on the afternoon of September 10 at a previously scheduled status conference, [*see* Doc. 111]. Counsel merely argued that an expert was needed "to review the computer without going into details of a possible defense as far as the essential elements of the case and give us some insight . . . on the elements of the offense and the evidence." [Doc. 169 at 5]. When questioned about the reason for the delay in obtaining an expert "to the extent . . . you're seeking an expert to address elements," counsel simply asserted that he had no need to do so "until the government files its notice."[4] The defendant never provided the Court with any further details about the proposed expert's examination or the purpose for it. The Court orally denied the motion to continue and the trial date remained set for September 25, 2007. Then, on September 21, 2007, Sprague's plea agreement, signed by him on September 19, was filed with the Court. [Doc. 127]. The Court conducted a Rule 11 colloquy and accepted the guilty plea on the same day. [*See* Doc. 128].

To be valid, a guilty plea must be made voluntarily and intelligently, with knowledge of relevant circumstances and likely consequences. *Boykin v. Alabama*, 393 U.S. 238, 242 (1969); *Brady v. United States*, 397 U.S. 742, 748 (1970). Determining whether a plea was made

---

[4] Counsel acknowledged, however, that the defense "thought we had somebody lined up even before the government filed its required notice." Counsel apparently did not contact the defense's proposed expert until September 7, 2007, five weeks after the filing of the government notice and only three days before the Court's September 10 status conference.

voluntarily requires an evaluation of all the relevant circumstances surrounding the plea. *Caudill v. Jago*, 747 F.2d 1046, 1050 (6th Cir. 1984). Rule 11 ensures that a defendant pleading guilty understands his constitutional rights, that his plea of guilty is voluntary with a full understanding of the nature of the crime charged and the consequences of his guilty plea, and that a factual basis exists for the crime to which the plea is offered. *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988). Once the district court conducts the required colloquy under Federal Rule of Criminal Procedure 11, and finds the plea knowingly and voluntary entered, absent compelling reasons to the contrary, the validity of the plea and the defendant's corresponding guilt are deemed to be conclusively established. *Gray v. Commissioner*, 708 F.2d 243, 246 (6th Cir. 1983), *cert. denied*, 466 U.S. 927 (1984).

The record here establishes conclusively that Sprague's guilty plea was voluntary. The Court scrupulously complied with the requirements of Rule 11 and properly determined that Sprague entered his guilty plea voluntarily. *Goldberg*, 862 F.2d at 106. The Court carefully reviewed with Sprague the rights he was waiving, that he understood that he was under oath and could be charged with perjury if he answered falsely, that he had read the superseding indictment and had sufficient time to discuss the case with his attorney, that he had read and understood the plea agreement, and that he was satisfied with counsel's representation of him. The Court verified that Sprague understood the nature of the charge, the elements of the offense, and the maximum penalty that could be imposed. [*See* generally Doc. 190]. Importantly, Sprague testified that pleading guilty was his "voluntary decision to do so." [*Id*. at 10].

Sprague verified the truthfulness of the stipulation of facts in his plea agreement which satisfied the required factual basis for the elements of the offense. The Court determined that Sprague understood the charge he was pleading guilty to and that he was pleading guilty because

he was "in fact guilty." [*Id.* at 11-15]. The Court determined that Sprague understood that he reserved the right to appeal the suppression issue but "[gave] up the right to file any appeal as to any other issues." [*Id.* at 18]. The Court, based on Sprague's answers to the Court's questions and the Court's observations of the appearance of the petitioner, specifically found that the plea was knowing and voluntary, [*Id.* at 24]. Furthermore, petitioner cannot now disavow his statements made under oath at the change of plea hearing. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir., *cert. denied*, 479 U.S. 1017 (1986); *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (even if evidence exists to contradict statements made during the change of plea hearing, petitioner is bound by them because to do otherwise "would condone the practice of petitioners providing untruthful responses to questions during plea colloquies.").

Even if petitioner could show that the Court somehow erred in denying the requested continuance, he cannot meet the second prong of *Strickland* and show that but for the error there is any reasonable possibility that the outcome of the case would have been any different. Although the potential expert was identified by counsel, petitioner makes no effort to explain the nature of the expected computer examination or, more importantly, how such an investigation could have given "input" on the elements of the offense or called into question the opinions of the government's expert. As a result, petitioner can show no prejudice and the claim that his guilty plea was involuntary and unknowing is without merit.

As for Sprague's claim that he "wanted to withdraw his guilty plea, but counsel told him he could not, that the judge would not let him," that claim lacks merit, in addition to the reasons set forth above, simply because it has no relationship to whether the ***previously*** entered plea was voluntary at the time it was entered. And, even assuming some deficient performance on the part of counsel, Sprague cannot meet the second prong of *Strickland* on this one either.

Federal Rule of Criminal Procedure 32(e) places the burden on a moving defendant to show a "fair and just reason" why withdrawal of a guilty plea should be allowed.  *See, e.g., United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996); *United States v. Baez*, 87 F.3d 805, 808 (6th Cir.), *cert. denied*, 519 U.S. 973 (1996); *United States v. Bashara*, 27 F.3d 1174, 1180 (6th Cir. 1994,) *cert. denied*, 513 U.S. 1115 (1995).  "[T]he aim of the rule is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty."  *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (internal quotation omitted), *cert. denied*, 502 U.S. 1117 (1992).  A "fair and just reason" for withdrawal is required once the court has accepted the plea even where the court has deferred a decision on whether to accept the plea agreement.  *United States v. Hyde*, 520 U.S. 670, 671 (1997).

In determining whether a defendant invoking Rule 32(e) has shown a "fair and just reason," the Sixth Circuit considers the following factors: (1) The delay in filing the motion to withdraw the plea; (2) the reason for any delay; (3) whether the defendant has asserted his innocence; (4) the circumstances underlying the plea; (5) the defendant's nature and background; (6) the defendant's prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.  *Alexander*, 948 F.2d at 1004; *United States v. Head*, 927 F.2d 1361, 1375 (6th Cir.), *cert. denied*, 502 U.S. 846 (1991); *United States v. Spencer*, 836 F.2d 236, 238 (6th Cir. 1987).  Sprague makes no attempt to show that any of these relevant factors would have weighed in favor of the withdrawal of his guilty plea, especially in light of clear and unequivocal sworn testimony at the change of plea hearing establishing beyond a reasonable doubt that he was in fact guilty.

Finally, Sprague appears to claim ineffective assistance of counsel because "counsel did not appeal the judge's ruling denying Sprague his own expert witness. An expert witness who would have completely changed the outcome of Sprague's case." [Doc. 185 at 7]. Presumably, petitioner refers to the September 10 motion to continue since there was no order denying a motion for an expert witness. District courts have wide latitude in deciding motions to continue. *Morris v. Slappy*, 461 U.S. 1, 11 (1983). The denial of a motion to continue is an abuse of discretion only when the district court engages in "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *United States v. Vasquez*, 560 F.3d 461, 466 (6th Cir. 2009) (quoting *Morris*, 461 U.S. at 11-12) (internal quotation marks omitted).

For the order to be reversible, the defendant must also show that the denial of the continuance actually prejudiced his defense. *Burton v. Penico*, 391 F.3d 764, 772 (6th Cir. 2004) (citing *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003)). "Actual prejudice is established by a showing that a continuance would have . . . added something to the defense." *United States v. Crossley*, 224 F.3d 847, 855 (6th Cir. 2000) (quoting *United States v. King*, 127 F.3d 483, 487 (6th Cir. 1997)) (internal quotation marks omitted). Sprague's conclusory allegations that "[a]n expert witness would have completely changed the outcome of Sprague's case" falls far short of establishing an abuse of discretion. In that light, counsel cannot be deficient by failing to appeal the order. Counsel is not required by *Strickland* "to raise every non-frivolous issue on appeal," *Ballard v. United States*, 400 F.3d 404, 407 (6th Cir. 2005) (quoting *Carver v. Straub*, 349 F.3d 340, 348-49 (6th Cir. 2003)), and is clearly not required to raise frivolous ones. Indeed, the process of "winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." *Id*. (internal quotation marks omitted). Petitioner's claim lacks merit.

**B.      Bias of Presiding Judge (Ground One)**

Sprague claims that the undersigned, the presiding judge in his case, was biased and "did not like Sprague because Sprague was gay" and "made an issue of it for upward departure."  The government responds that Sprague's claim is procedurally barred and provides no allegation of specific conduct by which petitioner was prejudiced.  The government also argues that the claim is barred by the post-conviction waiver in the plea agreement.

Sprague more specifically claims that he was "called . . . a homosexual in open court" at the first sentencing hearing, "that Judge Greer told Curtis Sluder that he was going to throw the book at Sprague" before any plea, and that "Greer had made up his mind before there was any hearing."  [Doc. 183 at 4].  Petitioner also apparently sees the Court's "refus[al]" of an expert witness as evidence of bias, as well as the Court's credibility determinations at sentencing.

This claim fails for several reasons.  First, the claim is procedurally barred, as the government argues.  Second, Sprague has knowingly waived his right to seek post-conviction relief on all grounds except for "claims of ineffective assistance of counsel . . . not known to the defendant by the time of the entry of judgment."  [Doc. 127 at ¶ 11]. *See United States v. Davila*, 258 F.3d 448, 449, (6th Cir. 2001).  Furthermore, the claim fails on its merits.  Sprague makes only conclusory allegations and does not support them with allegations of fact.

Sprague claims that the Court was biased against him because of his sexual orientation and "called Sprague a homosexual in open court" at the first sentencing hearing.  Sprague does not identify further the court proceeding at issue but the docket sheet reflects that the first sentencing hearing took place in the case on April 14, 2008.  As noted above, Sprague's guilty plea was entered on September 28, 2007, and sentencing was set for February 4, 2008.  Sentencing was continued from February 4, 2008, to March 24, 2008, [Doc. 134].  Each of the

parties filed a sentencing memorandum on March 10, 2008, [Docs. 138, 139]. On March 17, 2008, counsel moved to withdraw, [Doc. 142], and a hearing on the motion was conducted on March 24, 2008, [Doc. 145]. Counsel's motion was taken under advisement for ten days "in order for defense counsel to consult with the defendant and to supplement his motion if the relationship of defense counsel and the defendant could not be repaired." [Doc. 147]. No supplement was filed and the motion was denied on April 15, 2008. [*Id.*].

Sentencing was then set for April 14, 2008. On that date, the Court announced that it was considering a sentence above the advisory guidelines range of 180 months of imprisonment, the mandatory minimum sentence by statute. The defendant then asked for a continuance to subpoena witnesses. The defendant's request was granted and the matter was continued to June 23, 2008. [*See* generally Doc. 148]. The Court has read the transcript of the April 14 proceeding carefully and petitioner's allegation is conclusively refuted by the transcript. In addition to the Court's reading, a computer word search of the transcript reveals that the word "homosexual" was not uttered during the hearing. Sprague has not offered the affidavit of any of those who purportedly heard the Court make the statement alleged by Sprague, even his own. This claim is therefore contradicted by the record.

Second, Sprague claims that the Court "told Curtis Sluder that he was going to throw the book at Sprague" at some unspecified time before the entry of Sprague's guilty plea. Petitioner has provided no further information to indicate who "Curtis Sluder" is or the circumstances under which the alleged statement was made. Sprague has not provided the affidavit or declaration of Sluder and the allegation amounts to nothing more than a conclusory allegation unsupported by any factual allegations. This claim is frivolous and without merit.

Finally, Sprague points to the Court's "refusal" to provide an expert witness to Sprague. As noted above, the Court never denied a request for an expert witness, and no motion was filed requesting an expert. Sprague also points to the Court's credibility determinations at sentencing as evidence of bias. In any event, bias requiring disqualification of the presiding judge must arise from extrajudicial rather than judicial conduct, *see United States v. Story*, 716 F.2d 1088, 1091 (6th Cir. 1983), and the Court's judicial rulings rarely provide a basis for disqualification. See *Brown v. United States Patent and Trademark Office*, 226 Fed. App'x 866, 2007 WL 446601, at * 2 (11th Cir. Feb. 13, 2007) ("A party's complaints regarding judicial rulings . . . are not sufficient to require recusal."); *Smartt v. United States*, 267 F. Supp.2d 1173, 1176-77 (M.D. Fla. 2003) (collecting cases and holding that recusal statute "is not intended to bestow a veto power over judges or to permit 'judge shopping.' . . .).”

Petitioner's claim (Ground One) is baseless.

## C. Ineffective Assistance of Counsel (Ground Two)

Petitioner makes two allegations under this broad heading. First, he claims counsel was ineffective for not obtaining an expert witness "to counter the government's expert witness," and, second, he faults counsel for not interviewing and calling witnesses to testify at the hearing on his motion to suppress and at his sentencing hearing.

### 1. Failure to Obtain an Expert Witness

This issue has already been discussed at length in this memorandum. The Court will assume, without finding, that Sprague can establish deficient performance. His claim fails, however, because he cannot establish that the deficient performance prejudiced the defense. He can show no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 691. Sprague offers nothing

except the conclusory allegations that "an expert . . . would have made a big difference in the outcome of the case," [Doc. 183 at 5], and "would have caused a completely different outcome" in the case. [Doc. 185 at 1]. These conclusory allegations, without any allegations of fact to substantiate them, are insufficient to warrant a hearing. *O'Malley*, 285 F.2d at 735.

## 2. Failure to Interview and Call Witnesses

First, Sprague complains that counsel was deficient by failing "to interview and call two of the three people who witnessed the prior bad search" and "belittled the one witness he did call, because she was gothic." This claim is difficult to understand in light of the record in the case. Counsel called five witnesses at the suppression hearing, including two who were present when the search was conducted. After the Magistrate Judge recommended that the motion to suppress be denied, counsel filed objections to the report and recommendation and ultimately negotiated a plea agreement preserving Sprague's right to appeal the Court's ruling on the suppression motion.

Sprague's complaint about counsel's performance is conclusory and unsupported by specific allegations of fact. Petitioner does not identify any specific failures by counsel or explain how they would have changed the result of his motion hearing in any way. Petitioner has not identified by name the witnesses to whom he refers nor has he offered the affidavit or declaration of any witness indicating a willingness to testify or the content of any offered testimony. These failures are fatal to Sprague's claims. *See United States v. Robson*, 307 Fed. App'x 907, 911 (6th Cir. 2009) (declining to review ineffective assistance of counsel claim because the record did not show what further investigation could have been done or how it would have altered the outcome of the case).

Second, Sprague asserts ineffective assistance of counsel because counsel "failed

to contact Jess Chamberlain, Patricia Bowlin, or Lacy West, long-time friends of petitioner," for testimony at the sentencing hearing. He further faults counsel for not using the statement of Joe Duncan obtained by counsel's investigator, "a statement that was all good about Sprague." This claim suffers from the same fatal flaws as the previous one, except that here Sprague at least identifies the potential witnesses by name. But he does not provide any affidavit or declaration showing a willingness on their part to testify or the substance of their testimony. Petitioner makes no effort to show that testimony from any of the witnesses individually or collectively would have made any difference in the result of the sentencing proceedings.

### D.    Promise of 180 Month Sentence (Ground Four)

Sprague claims in his final ground that he entered into his plea agreement with the understanding that he would be sentenced to the 15 year mandatory minimum sentence. Sprague claims he had both "an oral and written agreement to the mandatory minimum sentence of 180 months." [Doc. 185 at 1]. He points to two "facts" to support his claim: First, that the government agreed to, and in fact did, recommend the 15 year mandatory minimum sentence to the Court, and, second, that the "probation department's PSI show[ed] a maximum sentence of 151 months."

This claim, like others, fails for multiple reasons. First of all, as the government correctly argues, Sprague retained the right to appeal his sentence and raised the substantive reasonableness of the sentence on direct appeal. His claim fails because Sprague cannot now use a § 2255 motion to litigate a matter that was raised on appeal (or could have been raised on appeal) absent "exceptional circumstances," such as an "intervening change of the law." *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996). Sprague does not allege such exceptional circumstances.

In addition, the claim is unequivocally contradicted by the record. Sprague's written plea

agreement, which he testified under oath that he had read, fully understood, and signed, had no provision agreeing to a 180 month sentence. The plea agreement was not made pursuant to Rule 11(c)(1)(C) and in fact provided that the punishment for the offense is "not less than 15 years nor more than 40 years," [Doc. 127 at ¶1(A)], and that the "Court may impose any lawful term of imprisonment up to the statutory maximum." [*Id.* at ¶2(A)]. The agreement specifically provides that "[n]o promises have been made by any representative of the United States as to what the sentence will be in this case," that "defendant understood that the sentence in this case will be determined by the Court after it receives the pre-sentence report," and that "defendant acknowledges that the sentencing determination will be based upon the entire scope of defendant's criminal conduct, the defendant's criminal history," the sentencing guidelines, and the factors in 18 U.S.C. § 3553. [*Id.* at ¶ 8]. Sprague has produced no other purported writing to support his claim of a "written agreement" to the 180 month sentence.

Sprague is also bound by his sworn statements at the change of plea hearing. After acknowledging that he understood he was under oath, Sprague unequivocally testified that he understood that he faced a 15 year mandatory minimum sentence and, more importantly, that the Court could impose the 40 year maximum sentence. Sprague stated that no one had made any promises to induce him to plead guilty and that he was pleading guilty voluntarily because he was, in fact, guilty. The Court described at length the factors to be considered at sentencing, including his advisory guidelines range, and Sprague acknowledged his understanding. Petitioner acknowledged that he understood a sentence could not be determined until the PSR was received by the Court and that he wanted to plead guilty after being advised that the Court could impose the 40 year statutory maximum. [See generally Doc. 170]. Sprague's fourth claim for relief is without merit and is, indeed, frivolous.

## IV.    Conclusion

For the reasons set forth above, the Court holds petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States.  Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED and his motion DISMISSED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Id.

A certificate of appealability should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473 (2000).  Having examined each of petitioner's claims under the Slack standard, the Court finds that reasonable jurists could not find that the dismissal of his claims was debatable or wrong.  Therefore, the Court will DENY a certificate of appealibility.

A separate judgment will enter.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
